UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AARON S. HUMPHREY, individually
and on behalf of all others
similarly situated,

                Plaintiff,

      - against -

RAV INVESTIGATIVE & SECURITY
SERVICES LTD., RAV TRADE SHOWS, INC.,
RON ALLEN, ABC CORPORATIONS #1-10,
and JOHN DOES #1-10, jointly and
severally,

                Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

12 Civ. 3581 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff Aaron S. Humphrey, <u>pro se</u>, brings this action against defendants RAV Investigative & Security Services Ltd. ("RAV Investigative"), RAV Trade Shows, Inc. ("RAV Trade Shows," and together with RAV Investigative, "RAV"), Ron Allen, ABC Corporations 1-10 and John Does 1-10, alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 <u>et seq.</u> ("FLSA"), and the New York Labor Law ("NYLL"). Humphrey principally alleges that his former employer RAV (i) frequently issued him weekly paychecks that bounced because RAV had insufficient funds and (ii) failed to remit certain deductions from his paychecks to the appropriate third parties, and that as a result he was not paid the required minimum wage and spread-of-hours wages. He also

1

brings claims for unpaid overtime wages and retaliatory termination. Defendants have moved to dismiss the amended complaint in its entirety and to strike the class and collective action allegations in the amended complaint. For the following reasons, we grant defendants' motion to strike and deny defendants' motion to dismiss.[1]

## BACKGROUND

### I.   Facts[2]

Defendants RAV Investigative and RAV Trade Shows are New York corporations that provide security guard services for facilities and events, with their principal places of business in New York and offices in various other states. Am. Compl. ¶¶ 8-9, 30. Defendant Ron Allen owns, operates and/or controls the day-to-day operations and management of the two companies. Id. ¶ 10.

---

[1] Humphrey's submissions in response to defendants' motion to dismiss and in further support of his motion to amend run afoul of this Court's Individual Practices and the Local Rules for the Southern District of New York. Humphrey should consult and comply with those rules in the future. We specifically stress that this Court's page-limit requirements for memoranda of law are 25 pages for memoranda of law in support of and in opposition to motions and 10 pages for reply memoranda, and that all text besides headings, footnotes, and block quotations must be double-spaced. Any future submissions exceeding the page-limit requirements will be rejected.

[2] The facts recited in this section are drawn from the amended complaint (or "Am. Compl.") and, to the extent that they are consistent with the amended complaint, Humphrey's opposition papers and the exhibits attached thereto, see ECF No. 37, and are assumed to be true for purposes of this motion.

Humphrey was employed by RAV as a security guard from February 2, 1998, until February 27, 2012, assigned primarily to 48 West 25th St. ("48 West") in Manhattan.  Id. ¶¶ 36, 38.  Humphrey "regularly" worked forty or more hours per workweek and his hourly wage was $8.00.  Id. ¶¶ 42-43.

The amended complaint highlights various improprieties related to paychecks RAV issued to Humphrey during his employment. First, on multiple occasions, RAV paychecks were rejected by banks and check cashing institutions for insufficient funds, meaning Humphrey was not paid for work performed and was charged bounced-check and overdraft fees.  Id. ¶¶ 44-45.

Second, pursuant to a court order, RAV was required to deduct a weekly child-support payment of $29.00 from Humphrey's paychecks but did not always remit that amount to the proper state agency, causing Humphrey to fall into arrears in late 2010 and his weekly payment to increase to "around" $44.00.  Id. ¶ 64; ECF No. 37 at 5-7.  The increased payments were themselves remitted either "grossly late" or never at all, causing the New York City Human Resources Administration Office of Child Support Enforcement ("OCSE") to request that Humphrey's driver's license be suspended and his bank account be frozen and garnished.  Am. Compl. ¶ 65.

Third, RAV consistently deducted union dues of approximately

$6.50 from Humphrey's weekly paychecks without remitting the sums to a union of which Humphrey was a member.  Id. ¶¶ 50-51.[3]

Fourth, on multiple paychecks issued to Humphrey, RAV listed deductions for "taxes" without itemizing which particular taxes were being withheld.  Id. ¶ 49.[4]  RAV deducted federal, state, and city income taxes and federal and state insurance taxes from his weekly wages, but in 2011, those amounts were not forwarded to the appropriate government agencies; instead, RAV kept the withheld amounts and underreported his wages to tax authorities.  Id. ¶ 67. Humphrey received two W2 forms from RAV Investigative for the 2011 tax year, with each form reflecting different gross wages and tax withholdings.  Id. ¶ 68.

The amended complaint highlights other issues related to RAV's compensation practices:  RAV required employees to wear a uniform but failed to pay an allowance for the maintenance and cleaning of the uniform, meaning Humphrey had to cover those costs

---

[3] In his amended complaint, Humphrey alleges that "[u]pon information and belief" he and other employees were represented by a union, Allied International Union ("AIU"), until November 2010.  Am. Compl. ¶ 50.  After AIU no longer represented the employees, RAV continued to deduct from Humphrey's weekly wages $6.50 for union dues for AIU.  Id. ¶ 51.  In his opposition papers, however, he contends that AIU informed him that he had never been a member, and that RAV belatedly told him that he was in fact represented by "Local 18."  ECF No. 37-3 at 1.  When Humphrey contacted Local 18 in March 2014, it said it had "dropped" RAV because RAV had not paid union dues since 2007.  Id.  We note that paystubs from RAV Investigative that Humphrey submits indicate that his dues were not actually fixed at $6.50.  See, e.g., ECF No. 37-23 at 1 (reflecting dues deductions of $7.20 and $6.40 for two different 2010 workweeks).

[4] Humphrey submitted numerous RAV paychecks from 2011 with his net wages typed out and handwritten deductions labeled as "taxes," with no itemized breakdown by category of tax.  See, e.g., ECF No. 37-1 at 32-34.

himself; and despite his regularly working "ten (10) plus" hour shifts, RAV failed to pay Humphrey "the correct amount of overtime wages" and the required spread-of-hours wages.  Id. ¶¶ 54-58, 89; see 12 N.Y.C.R.R. § 142-2.4(a) (entitling employee to one hour's pay at minimum hourly wage rate, in addition to the minimum wage required for hours worked, for any day in which the "spread of hours exceeds 10 hours").  Moreover, RAV failed to "maintain accurate and sufficient time records," and he did not see any notice or poster in an area in which he worked notifying him of his minimum wage and overtime pay rights.  Am. Compl. ¶¶ 62-63.

Based on the aforementioned problems with his wages, Humphrey reported RAV to government agencies, including the New York State Department of Labor (the "DOL"), which began to investigate RAV. Id. ¶¶ 116-17.  After receiving calls from a DOL Labor Standards Division investigator, RAV management told Humphrey not to report to his site on February 27, 2012, and to come in to RAV's corporate headquarters in New York to discuss with RAV's general manager the claim he had filed with DOL.  Id. ¶ 117; ECF No. 37 at 11-12.

At the meeting at RAV headquarters on March 2, 2012, RAV's general manager made photocopies of bounced RAV checks Humphrey was in possession of, asked him whom he was working with in Albany, and promised to make him whole.  ECF No. 37 at 4, 12.  A week or two later, Humphrey was told that certain paychecks were ready for him at headquarters.  Id. at 12.  When he came to pick them up, he

met with defendant Allen, who reaffirmed that RAV would make him whole.  Id.  Humphrey claims that he was not told at either meeting that he was terminated, which he only found out during mediation in this action in 2014, when Allen said he had been fired for walking away from his site and never returning.  Id. at 3, 12.

At some point soon after March 2, 2012, Humphrey received a call from a DOL investigator, who informed him that defendants had called her and asked if New York was an at-will state and if they could fire a fourteen-year employee without having to pay severance.  Am. Compl. ¶ 118.  Based on that phone call, Humphrey "discovered something was terribly wrong."  ECF No. 29 at 1.[5]

## II.  **Procedural History**

Humphrey, initially represented by counsel, brought this action on May 4, 2012.  He sought to prosecute his FLSA claims as an opt-in collective action and his NYLL claims as a class action.[6]

---

[5]  In his amended complaint, Humphrey alleged that he "discovered he was terminated" after receiving the call from the DOL investigator.  Am. Compl. ¶ 118.  However, after defendants pointed out that he had not brought a retaliation claim in his original complaint filed on May 4, 2012, despite apparently being aware he was terminated in early 2012, Humphrey wrote to the Court seeking to correct his amended complaint.  He stated that he had meant to write that he "discovered something was terribly wrong" after the call, and that, although RAV had pulled him from 48 West, he was in "limbo" and was not told he was fired until mediation.  ECF No. 29 at 1.  In a non-docketed June 9, 2015 letter, we informed him that we would consider his letter along with the amended complaint to the extent it related to the pending motion.

[6]  While four other individuals signed documents in 2012 indicating their intention to opt in as plaintiffs, their claims were ultimately dismissed without prejudice after the Court granted Humphrey's counsel's motion to withdraw.  Each of the four failed to pursue his claims, despite being provided with multiple opportunities to do so, by either hiring a lawyer or by individually representing himself.  See ECF Nos. 19, 21.

On December 5, 2013, the Court granted Humphrey's counsel's motion to withdraw.  An unsuccessful mediation session was held in the spring of 2014, and in December 2014, this Court entered an order striking the collective and class action allegations from Humphrey's initial complaint, see December 3, 2014 Order at 2-3, ECF No. 19 ("December 3, 2014 Order") ("Mr. Humphrey, who is not an attorney, has informed the Court that he intends to prosecute his claims pro se.  As such, he cannot 'fairly and adequately protect the interests of a class,' Fed. R. Civ. P. 23 (a)(4).  See, e.g., Jaffe v. Capital One Bank, No. 09-cv-4106, 2010 WL 691639 at *10-11 (S.D.N.Y. Mar. 1, 2010)." (brackets omitted)).

On April 3, 2015, Humphrey filed his amended complaint, which lists eight causes of action: (1) an FLSA claim for failure to pay minimum wage, post notices explaining minimum wage and overtime rights, and keep and preserve sufficient records; (2) an NYLL claim for minimum wage and overtime violations; (3) an NYLL claim for failure to pay spread-of-hours wages; (4) an NYLL claim for failure to cover uniform costs; (5) an NYLL claim based on RAV's deductions of union dues while Humphrey was not in a union and fees he incurred as a result of bounced checks; (6) an NYLL claim based on RAV's deductions of child-support payments without remitting those amounts to the appropriate agency in a timely manner or at all; (7) an NYLL claim based on RAV's failure to remit withheld taxes

to the appropriate tax authorities in 2011; and (8) an NYLL § 740 claim for retaliatory termination.

On July 16, 2015, defendants moved to dismiss the amended complaint in its entirety.   In opposing defendants' motion, Humphrey sought to further amend his amended complaint to clarify that his retaliation claim was not based solely on NYLL § 740, but also on any applicable statute, including the FLSA's anti-retaliation provision, see 29 U.S.C. § 215(a)(3).

## DISCUSSION

### I.  **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When deciding a motion to dismiss, this Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).  Nonetheless, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," dismissal is appropriate.  Id. at 570.

8

A complaint filed by a pro se plaintiff should be reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). While the Supreme Court's ruling in Iqbal imposed heightened pleading standards for all complaints, pro se complaints are still liberally construed. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). "Even in a pro se case, however, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

In deciding a motion to dismiss a pro se complaint, we may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," Alsaifullah v. Furco, No. 12-CV-2907 (ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," Agu v. Rhea, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); see Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (court may "consider factual allegations made by a pro se party in his papers opposing the motion"). Further, to the extent claims alleged for the first

9

time in motion papers could have been asserted based on the facts alleged in the complaint, they should also be considered.  Vlad-Berindan v. MTA New York City Transit, No. 14-CV-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

## II.   **Class and Collective Action Allegations**

Given Humphrey's pro se status, this Court has already ordered that the "collective and class action allegations of Mr. Humphrey's complaint [be] struck."  December 3, 2014 Order at 3.  While the amended complaint retains those allegations, Humphrey concedes that this action is now limited to his individual claims, see ECF No. 37 at 14.  Accordingly, the collective and class action allegations in the amended complaint will be struck.

## III.   **Overtime Claims**

Defendants argue that Humphrey's FLSA and NYLL overtime claims must be dismissed because he has not alleged enough facts about his unpaid work to support a reasonable inference that he worked more than 40 hours in a given week.[7]  The FLSA requires that "for a workweek longer than forty hours," an employee shall be compensated for those excess hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The overtime requirement under the NYLL is

---

[7] While Humphrey brings an overtime claim only under the NYLL, given his pro se status and the identical pleading standards applicable to an FLSA overtime claim, we construe the amended complaint to raise such a claim as well.

identical for purposes of this motion. Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 n.5 (2d Cir. 2013).

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). In Lundy, the Second Circuit affirmed the dismissal of plaintiffs' overtime claims where plaintiffs did not allege a single week in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours; the Lundy plaintiffs typically worked fewer than 40 hours a week, and allegations that they were "typically" uncompensated for certain activities were insufficient where the Court was required to speculate as to whether this additional time put them over the 40-hour mark in one or another unspecified week or weeks. Id. at 114-15; see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) (affirming dismissal of overtime claims because "absent any allegation that Plaintiffs were scheduled to work forty hours in a given week," plaintiffs did not demonstrate how instances of uncompensated time resulted in more than 40 hours of work in a given week).

In a third decision on pleading standards for overtime claims, the Circuit again concluded that dismissal was warranted, finding that the plaintiff's "complaint tracked the statutory language of

the FLSA, lifting its numbers and rehashing its formulation, but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation," Dejesus, 726 F.3d at 89. The Court highlighted the threadbare pleading, which "did not estimate [plaintiff's] hours in any or all weeks or provide any other factual context or content," and "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation." Id.

In light of the Circuit's overtime trilogy, a successful FLSA overtime claim must be based on "sufficient factual allegations . . . rather than a general and conclusory allegation as to the number of hours 'routinely' worked—whereby the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation." Bustillos v. Acad. Bus, LLC, No. 13 CIV. 565 (AJN), 2014 WL 116012, at *4 (S.D.N.Y. Jan. 13, 2014). Construing the amended complaint liberally and considering the factual content in his opposition papers consistent with the amended complaint, Humphrey has met that standard.

While the allegations in the amended complaint with respect to overtime hours are meager, Humphrey explains in his opposition that he worked a ten-hour night shift at 48 West from 9:00 p.m. to 7:00 a.m. on Sunday through Wednesday nights, and was required to arrive early prior to each shift. At the beginning of their night

12

shifts at 48 West, RAV guards would relieve the building's staff, and were "told to arrive 30-minutes early" to facilitate the transfer of keys from staff to RAV guards and to permit RAV guards to be "briefed on [the] latest building developments by HQ and jobsite building staff (porter/super)." ECF No. 37-16 at 1; see also ECF No. 42 at 4 (RAV insisted "guards working at that site arrive a half-hour early every day to properly relieve and be briefed by clients who[] didn't want to stay late or have their boss incur the 30-minutes of overtime each day"). Moreover, on Sundays, because building staff did not relieve the weekend RAV guard at the end of his shift on Sunday morning, that guard was required to drop the keys to 48 West off at RAV headquarters; accordingly, before beginning his own Sunday night shift, Humphrey would arrive at RAV headquarters "an hour early" to pick up keys and be briefed by RAV's dispatcher. Id. At some point, RAV moved its headquarters further from 48 West and Humphrey claims that he then had to find other ways to obtain the keys prior to his shift. See ECF No. 37-16 at 1. He estimates an average of two and one-half hours of uncompensated work in excess of his scheduled 40 hours each week. See id.; ECF No. 42 at 5.

These allegations provide more factual context than those of the plaintiffs in the above-cited Second Circuit decisions: Humphrey asserts that he had a scheduled workweek consisting of four ten-hour shifts, but was also required to arrive early to

each shift for specific reasons, and he believes this uncompensated time averaged out to two and one-half hours per week.  While he does not isolate any particular week, his claim appears to be that he was never paid for early-arrival time.  It is plausible that RAV required guards to arrive early at 48 West, and because Humphrey's alleged overtime hours "were worked pursuant to the defendants' policies, . . . the court may reasonably infer that such practices occurred as a matter of course throughout the relevant period," <u>Chime v. Peak Sec. Plus, Inc.</u>, No. 13-CV-470 (WFK)(VVP), --- F. Supp. 3d ---, 2015 WL 5773951, at *12 n.10 (E.D.N.Y. Sept. 29, 2015).  In sum, Humphrey has adequately pleaded FLSA and NYLL overtime claims for those workweeks when he was required to arrive early.[8]

**IV.   <u>Spread-of-Hours Claim</u>**

As noted above, the NYLL entitles an employee to "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required" for any day "in which the spread of hours exceeds 10 hours," 12 N.Y.C.R.R. § 142-2.4(a), with the "spread of hours" referring to "the interval between the beginning and end of

---

[8] Certain documents Humphrey submitted undermine his overtime claims.  For example, several of his weekly paystubs show fewer than 40 hours worked, <u>see</u>, <u>e.g.</u>, ECF No. 37-23 at 2, 5, 18, 25; ECF No. 37-25 at 3-4, 19, and in a "Claim for Unpaid Wages" form dated December 22, 2011, he listed his hours worked per week as 40, ECF No. 37-19 at 11-12.  While these documents suggest that Humphrey's uncompensated overtime work may have been more episodic than he alleges, defendants do not refer to them and we avoid narrowing his claims based on records provided without explanation.

an employee's workday," id. § 142-2.18.  The DOL has interpreted "New York's spread of hours provision as applying only to employees earning minimum wage," Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012) (internal quotation marks omitted), and "[t]he majority of district courts in this circuit are in accord with the [DOL's] position that those earning more than the minimum wage are not entitled to spread-of-hours pay," Singh v. Patel, No. 12-CV-3204 (SJF)(ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013) (internal quotation marks omitted); see id. (collecting cases).

Defendants contend that the spread-of-hours claim must be dismissed for two reasons:  Humphrey earned more than the minimum wage during the six years prior to this action[9] and did not allege a single day on which he worked more than ten hours.  We have already rejected the latter argument in considering Humphrey's overtime claims:  he alleges with sufficient specificity that he worked ten-hour shifts four days a week and that RAV required him to perform an average of 30 minutes of uncompensated overtime three days a week and one hour of uncompensated overtime on the remaining day.

Defendants' argument with respect to the minimum wage does not withstand scrutiny.  The table below sets forth the applicable

---

[9] The statute of limitations for a spread-of-hours claim is six years.  See N.Y. Lab. Law § 663(3).

minimum wage for the six years prior to the filing of the initial complaint on May 4, 2012.[10]

| Time Period | May 4, 2006-December 31, 2006 | January 1, 2007-July 23, 2009 | July 24, 2009-May 4, 2012 |
|---|---|---|---|
| Minimum Wage | $6.75 per hour | $7.15 per hour | $7.25 per hour |

Although defendants point out that Humphrey alleges that his hourly wage was $8.00, greater than the applicable minimum wage at any point during those six years, they ignore his allegations with respect to RAV's bounced paychecks and failure to remit certain deductions from wages.  An employer's paychecks bouncing may establish liability for FLSA and NYLL minimum wage violations if the employee is underpaid as a result.  See Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d 336, 341, 353-54 (S.D.N.Y. 2014) (entering default judgment against RAV for liability on pro se plaintiff's minimum wage claims despite $8.00 hourly wage based in part on allegations that paychecks frequently bounced, with the replacement checks RAV issued often returned for insufficient funds).  Further, taxes, union dues, and child-support payments deducted from paychecks but never forwarded to

---

[10] The minimum wage in New York State was $6.75 per hour worked from January 1 through December 31, 2006, and $7.15 per hour worked from January 1, 2007, through the filing of Humphrey's initial complaint.  N.Y. Lab. Law § 652(1); see 29 U.S.C. § 218(a) (for any period when state's minimum wage exceeds that of federal law, the state-law requirement controls).  However, the FLSA established a greater minimum wage than New York did--$7.25 per hour worked--from July 24, 2009, forward, see id. § 206(a)(1)(C) (increasing federal minimum wage from $6.55 to $7.25, 24 months and 60 days after May 25, 2007), and thus is controlling for that period.

the relevant third parties are not part of an employee's wages for FLSA or NYLL purposes.  See Widjaja v. Kang Yue USA Corp., No. 09-CV-2089 (RRM)(CLP), 2011 WL 4460642, at *5 (E.D.N.Y. Sept. 26, 2011) ("[T]axes withheld from an employee's wage, but not forwarded to the IRS cannot be included in the employee's wage in determining whether an employer has met minimum wage standards."); Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632, 656 (N.D. Ill. 2007) (sufficient factual showing that employer failed to remit withholdings would prevent employer from claiming tip credit).[11]

Accordingly, the question is whether the alleged bounced checks and improper deductions reduced Humphrey's $8.00 hourly wage below the applicable minimum wage for any identifiable period. At the least, Humphrey's allegations as to withheld taxes in 2011, if true, would mean that he earned less than the minimum wage that year. For a given week in which he worked 40 hours, Humphrey's gross wages were $320.00, but if more than $30.00 was withheld from his weekly pay for taxes without being remitted, see, e.g.,

---

[11] Under the FLSA, certain payroll deductions, if appropriately remitted, may bring an employee's hourly wage below the minimum wage.  See 29 C.F.R. § 531.38 ("Taxes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate governmental agency may be included as 'wages.'"); id. § 531.39(a) (payment to third party pursuant to court order "for the benefit and credit of the employee will be considered equivalent, for the purposes of the [FLSA], to payment to the employee" as long as "neither the employer nor any person acting in his behalf or interest derives any profit or benefit from the transaction"); id. § 531.40 (a), (c) (employers permitted to treat as payment to employees union dues paid pursuant to a collective bargaining agreement).  However, in this case, Humphrey alleges that RAV often did not remit the deducted amounts.

ECF 37-22 at 24-26 (2011 RAV Investigative weekly paychecks to Humphrey showing handwritten "taxes" deductions of $42.15), his hourly wage would be less than the applicable $7.25 minimum wage.

Notably, Humphrey provides documentary support for his claim that RAV failed to timely remit certain withheld taxes. He includes a letter from the New York State Department of Taxation and Finance dated April 22, 2014, showing that his employer "RAV Investigative & Security Services LT" reported his wages for 2011 as $4,464.00 and withheld zero New York State and City income taxes that year. ECF No. 37-17 at 2. The letter is inconsistent with two W2 forms he claims to have received from RAV Investigative for 2011, the first of which lists "Wages, tips, other comp." of $16,688.00 and the second of which lists $17,312.00, ECF No. 37-17 at 5, 8. The letter is also inconsistent with copies of Humphrey's paychecks, which show that RAV Investigative was deducting money from his weekly wages in 2011 for state and city income taxes, see ECF No. 37-22. Defendants may resolve these apparent inconsistencies by producing records of remittances to tax authorities, but at this stage Humphrey has plausibly claimed that he earned less than the minimum wage in 2011.

For any year besides 2011, the question of whether--assuming Humphrey's allegations to be true--he earned less than minimum wage will require a clearer presentation of when deductions for child-support payments were made and not remitted. Humphrey

18

submits a spreadsheet purporting to compare, for the six years prior to this action, the amounts deducted by RAV from his paychecks for child support and the amounts actually remitted by RAV, backed by copies of RAV paystubs and OCSE Payment History statements; he calculates the total difference as $1,944.81.  See ECF Nos. 37-1, 37-2.  Beginning in late 2010, Humphrey's weekly child-support deductions were allegedly around $44.00, and any week he earned $320.00 in gross wages for 40 hours' work and RAV deducted around $44.00 from his paycheck without forwarding it to the appropriate state agency, his hourly wage was below the applicable minimum wage of $7.25.  Previously, his weekly child-support deductions were allegedly $29.00, and at least after January 1, 2007, any 40-hour week in which RAV deducted $29.00 for child-support payments and at least $6.00 for union dues while not forwarding either amount to the appropriate entity, Humphrey's hourly wage was below the applicable minimum wage.

Finally, the spread-of-hours claim need not rely entirely on deductions.  For example, Humphrey asserts that he was not paid for work performed the week of May 30 to June 5, 2011, or for his last day of work in 2012.  See ECF No. 37 at 36.  Humphrey did not make minimum wage any day for which he was not paid at all.  At this stage, his allegations are sufficient to show that he was paid less than minimum wage for certain periods, and thus we will not dismiss his spread-of-hours claim on that ground.

## V.   **Retaliation Claim**

Humphrey's retaliation claim is brought pursuant to NYLL § 740, which prohibits employers from retaliating against any employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety," N.Y. Lab. Law § 740(2)(a).  In his opposition, Humphrey seeks to amend his amended complaint to bring his retaliation claim under a number of federal and state statutes, including the FLSA's anti-retaliation provision.

Defendants contend that Humphrey fails to state a claim under NYLL § 740 because the statute requires an aggrieved employee to institute a civil action "within one year after the alleged retaliatory personnel action was taken," id. § 740(4)(a), and because the wage-and-hour practices he reported did not present a substantial and specific danger to the public health or safety. Further, they argue that Humphrey should not be permitted to bring the claim under any other statute because he failed to attach a proposed second amended complaint.

While defendants are correct that Humphrey cannot maintain a claim under NYLL § 740 because his whistleblowing did not relate to any RAV activity or practice posing a danger to public health or safety, in light of Humphrey's pro se status we read the facts

20

alleged in the amended complaint as properly raising an FLSA retaliation claim.   The FLSA makes it unlawful for any employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."   29 U.S.C. § 215(a)(3).   A <u>prima facie</u> claim of retaliation is established by "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."   <u>Mullins v. City of New York</u>, 626 F.3d 47, 53 (2d Cir. 2010).

Here, Humphrey claims that, as a result of his reporting RAV to the DOL for unpaid wages due to bounced paychecks and improper deductions, RAV pulled him from his jobsite permanently, required him to discuss his claims with RAV management, and ultimately fired him.   To support these allegations, he attaches his letter dated December 21, 2011, to the DOL's Division of Labor Standards requesting an investigation of RAV for unpaid wages, <u>see</u> ECF No. 37-19 at 8, a letter from a DOL investigator dated January 11, 2012, acknowledging receipt of Humphrey's recent complaint and confirming that DOL was looking into the matter, <u>see</u> ECF No. 37-21 at 9, and his own letter to RAV management dated January 31, 2012, in which he noted "RAV's attempt to harass me into resigning

21

after becoming a 'whistle-blower' and falling into disfavor" and raised the possibility of legal action, id. at 10.  The foregoing provides an adequate basis upon which to permit Humphrey to pursue an unlawful retaliation claim under the FLSA.

Defendants' argument that he waived his right to bring any other claim arising out of his termination by initially claiming a violation of NYLL § 740 is without merit.  Known as the Whistleblower Law, § 740 contains a broad waiver provision stating that the "institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other . . . law, rule or regulation or under the common law," N.Y. Lab. Law § 740(7), and elsewhere defines "law, rule, or regulation" to include "any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance," id. § 740(1)(c).  While the New York Court of Appeals has held that the "plain text of this provision indicates that 'institut[ing]' an action—without anything more—triggers waiver," Reddington v. Staten Island Univ. Hosp., 11 N.Y.3d 80, 87, 862 N.Y.S.2d 842, 847 (2008) (alteration in Reddington), neither the Court of Appeals nor the Second Circuit has addressed whether the provision reaches federal claims. However, the majority of district courts in this Circuit, citing the constitutional concerns raised by a construction that requires the automatic waiver of a plaintiff's federal rights, cf. U.S.

22

Const. art. VI, cl. 2, have construed the provision as not barring claims under federal law. <u>See</u> <u>Malanga v. NYU Langone Med. Ctr.</u>, No. 14CV9681, 2015 WL 7019819, at *3 (S.D.N.Y. Nov. 12, 2015) (declining to read § 740(7) to preclude False Claims Act claim because it would be "seemingly incongruous" with the Supremacy Clause); <u>Hettler v. Entergy Enters., Inc.</u>, 15 F. Supp. 3d 447, 451-53 (S.D.N.Y. 2014) (following the "canon of constitutional avoidance and declin[ing] to interpret Section 740(7) as supplanting claims arising under federal law"); <u>Slay v. Target Corp.</u>, No. 11 CIV. 2704 (MHD), 2011 WL 3278918, at *4 (S.D.N.Y. July 20, 2011) (inferring that Whistleblower Law "does not purport to reach" federal claim "as a means of avoiding a serious potential constitutional defect in the state enactment"); <u>Kramsky v. Chetrit Grp., LLC</u>, No. 10 CIV. 2638 (HB), 2011 WL 2326920, at *6 n.6 (S.D.N.Y. June 13, 2011); <u>cf.</u> <u>Collette v. St. Luke's Roosevelt Hosp.</u>, 132 F. Supp. 2d 256, 265-67, 268 n.8 (S.D.N.Y. 2001) (Lynch, <u>J.</u>) (leaving open whether election of a Whistleblower Law action waived federal rights but noting that "the policy of constitutional avoidance weighs heavily in favor of seeking sensible alternatives to any construction of the Act which would require automatic waiver of the plaintiff's federal rights"); <u>but see</u> <u>Nadkarni v. N. Shore-Long Island Jewish Health Sys.</u>, No. 02-CV-05872-JS, 2003 WL 24243918, at *6 (E.D.N.Y. July 31, 2003) (dismissing ADA claim as waived without addressing constitutional concerns). We are

23

persuaded by the reasoning of the authorities cited above and thus do not interpret the waiver provision to bar Humphrey's FLSA retaliation claim.[12]

We note one issue going forward. The FLSA's statute of limitations is two years, or three years when the employer's violations were willful. 29 U.S.C. § 255(a). While defendants have only raised a timeliness argument with respect to the one-year limitations period under the Whistleblower Law, the FLSA retaliation claim, which does not relate back to the filing of the

---

[12] While unnecessary to our decision, we believe that a finding that waiver is inappropriate is also supported by Judge Lynch's narrow interpretation of the waiver provision in Collette to reach only "rights and remedies concerning whistleblowing as defined in the [Whistleblower Law]," 132 F. Supp. 2d at 274. After carefully considering the text and legislative history of the Whistleblower Law and the guidance provided by its practice commentaries, Judge Lynch concluded that it prevents employees from pursuing "other legal rights and remedies that protect against the same wrong that the statute itself prohibits." Id. at 267-74.

Here, Humphrey's allegations target a different "wrong" than the Whistleblower Law does. See Slay, 2011 WL 3278918, at *5 (waiver did not apply to other wrongful termination claims where plaintiff was not alleging he was "terminated for reporting a health-and-safety violation, but rather because of both his race and his complaint about racial discrimination," which "concerns do not mirror the focus of section 740"). The purpose of the FLSA is to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), which it does "in part by setting forth substantive wage, hour, and overtime standards," Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 11 (2011). The statute's focus is on ensuring fair compensation, and its anti-retaliation provision was intended to prevent "fear of economic retaliation from inducing workers quietly to accept substandard conditions." Id. (internal quotation marks omitted). While bearing some relation to public health and safety, this concern is distinct from that of the Whistleblower Law, which is aimed at encouraging reporting of hazardous conditions posing a threat to the public. Defendants no doubt recognize this, as one of their arguments for dismissal is that "NYLL § 740 simply does not protect the type of wrong alleged in the Amended Complaint," Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 9.

Finally, waiver would be an especially harsh result here given that Humphrey added the retaliation claim pro se; he may have been drawn to the "whistleblower" statute without realizing that other available causes of action both were more on point and would not raise any waiver issues.

24

original complaint, see generally Fed. R. Civ. P. 15(c), would be untimely even under the longer three-year period if it accrued prior to April 3, 2012.

In response to defendants' untimeliness argument, Humphrey contends that he twice met with RAV management in the weeks after he was replaced at 48 West on February 27, 2012, but was not told he was fired.  Noting that his original May 4, 2012 complaint alleged that he was still employed by RAV, see ECF No. 1 at ¶ 35, he argues that RAV kept him in the dark with respect to his status until mediation in this case in 2014.  However, given that he never worked for RAV again after being replaced on February 27, 2012, Humphrey may have been effectively notified of RAV's alleged retaliatory conduct either on that date or shortly thereafter— indeed, he includes a form from the DOL indicating he applied for unemployment insurance with a "claim effective/start date" of April 9, 2012, ECF No. 37-17 at 3.  Accordingly, before moving to the merits of the retaliation claim, the parties should conduct limited discovery on whether it is time-barred.

## VI.  **Minimum Wage and Unlawful Deductions Claims**

Defendants contend that this Court does not have supplemental jurisdiction over Humphrey's claims for unlawful deductions pursuant to NYLL § 193 and that any minimum wage and unlawful deduction claims are moot because they have tendered him checks to compensate him for those claims.  Both arguments are meritless.

25

As to supplemental jurisdiction, Humphrey's § 193 and FLSA claims "form part of the same case or controversy," 28 U.S.C. § 1367(a), as they "clearly derive from . . . a common nucleus of operative facts since they arise out of the same compensation policies and practices of [RAV]" with respect to Humphrey over a particular time period, Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011). Humphrey's claims pursuant to NYLL § 193, which provides that "[n]o employer shall make any deduction from the wages of an employee, except" those authorized by law or any rule or regulation issued by any governmental agency, or those expressly authorized in writing by the employee for his own benefit, N.Y. Lab. Law § 193(1), are based on RAV's alleged failure to remit wages withheld for union dues, taxes, and child-support. As discussed above, those deductions also underlie his theory of why he was paid less than minimum wage, and accordingly, the § 193 claims are inseparable from the FLSA minimum wage claim. Confident that we have supplemental jurisdiction over the § 193 claims, we see no reason to exercise our discretion to decline it given that we are not dismissing Humphrey's federal claims and the straightforward issues of New York law presented.

With respect to defendants' mootness argument, the Supreme Court recently held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case," Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 672 (2016). Even prior to Gomez, an

offer of judgment could not render a plaintiff's claims moot "where there are disputes as to whether an offer of judgment affords complete relief on the plaintiff's claims," Rivera v. Harvest Bakery Inc., No. 13-CV-691 (ADS)(AYS), 2016 WL 297458, at *10 (E.D.N.Y. Jan. 25, 2016); see, e.g., Jones-Bartley v. McCabe, Weisberg & Conway, P.C., 59 F. Supp. 3d 617, 630 (S.D.N.Y. 2014) ("Because the parties continued to dispute the form and extent of the relief to which the plaintiff was entitled, the case never became moot." (internal quotation marks and brackets omitted)).

Here, defendants have not made an offer of judgment, but have tendered replacement checks for nine checks that they claim Humphrey did not cash, in addition to compensating him for a check that bounced and the resulting fee. Declaration of Louis Pechman in Support of Motion to Dismiss Plaintiff's Amended Complaint, Ex. E at 7. In addition, they tendered a check for union dues "mistakenly deducted from Humphrey's pay from May 1, 2009 through October 2010." Id. at 8. However, Humphrey has refused defendants' checks and, if his allegations are true, they would not provide him with complete relief. For example, even assuming defendants' characterization of the amounts owed are correct, Humphrey's minimum wage claims are based in part on RAV's failure to remit tax and child-support deductions, for which defendants have not offered compensation. Moreover, he asserts that he incurred fifteen bounced-check fees and that RAV did not remit his

dues to a union throughout the six years prior to this action. See ECF No. 37 at 34; ECF No. 37-3 at 1; see also supra note 3.

In sum, defendants' motion to dismiss with respect to the minimum wage claims (causes of action one and two) and § 193 claims (causes of action four, five, six, and seven) is also denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied and defendants' motion to strike the class and collective allegations in the amended complaint is granted.   Humphrey has moved to further amend his amended complaint to bring retaliation claims under sources of law other than NYLL § 740, and we deny that motion on the ground that we construe his amended complaint as having raised an FLSA retaliation claim.   Humphrey also appears to have moved to compel defendants to submit various evidence, which motion is denied as premature.   Defendants are directed to serve an answer within fourteen days of the entry of this decision. The Clerk of Court is respectfully directed to close the motions at docket numbers 28, 32, 37, and 42.

**SO ORDERED.**

Dated:   New York, New York
         March **10**, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

28

Copies of the foregoing Order have been mailed on this date to the following:

    Aaron S. Humphrey
    344 E. 28th Street
    #2C
    New York, NY 10016